Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax (775) 703-5027

*Attorneys for Plaintiff*
*and all Similarly Situated Individuals*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| AYNUR KABOTA, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>SUNRISE HOSPITAL AND MEDICAL CENTER, LLC; HOSPITAL CORPORATION OF AMERICA, d/b/a HCA HEALTHCARE, INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250;<br><br>3) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; and<br><br>4) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050.<br><br>**LIEN REQUESTED PURSUANT TO NRS 608.050**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff AYNUR KABOTA ("Plaintiff"), on behalf of herself and all other similarly situated and typical persons, and alleges the following:

All allegations in this Complaint are based upon information and belief, except for those allegations that pertain to the Plaintiff named herein and her Counsel. Each allegation in this

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), which states: "An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

2.      This Court has original jurisdiction over the state law claims alleged herein pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2), because: (i) the aggregate amount in controversy for the state law class claims exceeds $5,000,000.00, (ii) there are more than 500 state law class members, and (iii) at least one state law class member is diverse from Defendants.

3.      This Court also has supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. § 1367 because the state law claims alleged herein all arise out of the same transaction and occurrence (*i.e.*, the failure to properly pay all wages due and owing for compensable work performed yet unpaid) and there is no conflict between the procedures applicable to the FLSA and State law claims. *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528-30 (9th Cir. Nev. Apr. 12, 2013) ("In sum, we agree with the other circuits to consider the issue that the fact that Rule 23 class actions use an opt-out mechanism while FLSA collective actions use an opt-in mechanism does not create a conflict warranting dismissal of the state law claims." (reversed on other grounds)).

4.      A party seeking to recover unpaid wages has a private right of action pursuant to the Nevada Revised Statute ("NRS") Chapter 608. *See Neville v. Eighth Judicial Dist., Terrible Herbst, Inc.,* 133 Nev. 777, 783, 406 P.3d 499, 504 (2017) (recognizing that "The Legislature enacted NRS 608.140 to protect employees, and the legislative scheme is consistent with private causes of action for unpaid wages under NRS Chapter 608."); *HG Staffing, LLC v. Second Judicial District Court in and for County of Washoe*, 2020 WL 2306318, at *1 (May 7, 2020)

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

("In *Neville v. Eighth Judicial District Court*, 133 Nev. 777, 406 P.3d 499 (2017), we held, by necessary implication, that exhaustion of administrative remedies is not required before filing an unpaid-wage claim in district court.").

5.  Plaintiff also claims a private cause of action to foreclose a lien against the property owner for wages due pursuant to NRS 608.050.

6.  Plaintiff made a proper demand for wages due pursuant to NRS 608.140 on April 4, 2025.

7.  Venue is proper in this Court because one or more of the Defendants named herein maintains a principal place of business or otherwise is found in this judicial district, and many of the acts complained of herein occurred in Clark County, Nevada, which is located within this judicial district.

## **PARTIES**

8.  Plaintiff AYNUR KABOTA ("Plaintiff" or "Plaintiff Kabota") is a natural person who has been employed by Defendants within the State of Nevada from on or about March 6, 2023, to the present.

9.  Defendant SUNRISE HOSPITAL AND MEDICAL CENTER, LLC ("Sunrise") is a for-profit hospital owned by Hospital Corporation of America ("HCA").

10.  Defendant Sunrise is an active foreign limited-liability company, incorporated in Delaware. Sunrise maintains a principal place of business at 3186 S. Maryland Pkwy, Las Vegas, Nevada 89109. Defendant Sunrise's agent of service is CT Corporation System, located at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701.

11.  Defendant HOSPITAL CORPORATION OF AMERICA, d/b/a HCA HEALTHCARE, INC. ("HCA") is an active foreign limited-liability company, incorporated in Delaware. HCA maintains a principal place of business at One Park Plaza, Nashville, Tennessee 37203. Defendant HCA's agent of service is CT Corporation System, located at 701 S. Carson Street, Suite 200, Carson City, Nevada 89701.

12.  The identity of DOES 1-50 is unknown at this time, and this Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes

that each of the Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "Sunrise" or "HCA" herein shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

### A.    The Parties

13.    Sunrise operates four (4) hospitals, five (5) freestanding ERs, nineteen (19) urgent care centers, and five (5) surgery centers throughout Las Vegas and Southern Nevada. *See* https://www.sunrisehealthinfo.com/?sc_lang=en-US (last visited 3/6/25).

14.    Sunrise operates facilities, including but not limited to Sunrise Hospital and Medical Center, MountainView Hospital, Southern Hills Hospital and Medical Center, and the Sunrise Children's Hospital, as well as the CareNow Urgent Care and ER at Aliante. *See* https://www.sunrisehealthinfo.com/locations?page=1&filters.marketed_secondary_types_names=Hospital (last visited 3/6/25).

15.    HCA is a for-profit operator of healthcare facilities that owns and operates 186 hospitals and approximately 2,400 sites of care, including surgery centers, freestanding emergency rooms, urgent care centers, and physicians' clinics in 20 states and the United Kingdom. *See* https://investor.hcahealthcare.com/corporate-profile/default.aspx (last visited 3/6/25).

16.    Plaintiff Kabota has been employed by Defendants as a critical care Registered Nurse (RN) in the Intermediate Care Unit ("IMC"). Plaintiff Kabota is an hourly paid, non-exempt, patient care employee whose current hourly wage rate is $58.97, not including premiums for evening, night, and weekend shifts, as well as on-call and call back pay premiums.

17.    Plaintiff Kabota's regular schedule is three (3) shifts a week, for 12.5 hours each shift, from 7:00 p.m. to 7:30 a.m. Plaintiff Kabota is also required to be available for extra shifts, work overtime when needed, and on call. Plaintiff Kabota recalls working more than forty (40) hours in a week on several occasions when she worked shifts greater than 12.5 hours or for on-call and call back as required due to staffing issues and/or workload.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

18.    Particularly, Plaintiff Kabota's pay stubs show that she worked: (a) 80.41 hours for the pay period of 10/1/23 to 10/14/23, (b) 87.46 hours for the pay period of 7/23/23 to 8/5/23, (c) 97.36 hours for the pay period of 7/9/23 to 7/22/23, and (d) 84.05 hours for the pay period 6/25/23 to 7/8/23. *See* Exhibit A, Kabota Pay Stubs.

19.    Upon information and belief, Defendants' pay period begins on Sunday at 12:00 a.m. and ends at midnight on the 14th day (Saturday).

**B.    Defendants' Timekeeping and Electronic Medical Record System**

20.    Defendants maintained a timekeeping policy whereby all non-exempt hourly paid employees would clock in and out via the KRONOS timekeeping system. The clock-in/out times are then used to calculate the hours worked for the payment of wages. An employee would not be compensated for time worked if he/she was not clocked in to KRONOS.

21.    Defendants maintained an electronic medical record (EMR) system called Meditech, whereby Plaintiff and all other similarly situated patient care employees would record and document any and all patient care notes and records as part of their job requirements. The Meditech system records the specific time in which Plaintiff and all other patient care employees enter data into the system.

22.    Defendants engaged Plaintiff and all others similarly situated patient care employees to make entries into the Meditech system while at the employer's place of employment. It is integral, indispensable, and legally necessary to the performance of the job of providing patient care that Plaintiff and patient care employees make these entries into the Meditech system, which are also an essential part of the medical billing process.

**C.    A Comparison Between KRONOS and Meditech Data Demonstrates That Defendants Suffered and/or Permitted Plaintiff and All Similarly Situated Patient Care Employees to Perform Work Without Compensation**

23.    Plaintiff and all similarly situated patient care employees performed work for which they were not compensated.

24.    A comparison between the KRONOS timekeeping data and the Meditech data demonstrates and/or will demonstrate that Plaintiff interacted with the Meditech system when

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

she was either off-the-clock and/or during her meal break; therefore, Plaintiff was not compensated for all the hours that she actually worked.

25.    Plaintiff Kabota charted in the Meditech system when she was not logged into KRONOS on several occasions, either prior to the beginning of her shift or during her meal periods.

26.    Defendants and Defendants' agents were aware that Plaintiff and all other similarly situated patient care employees were working without compensation because employees were required to be physically present at Defendants' facility, and the Meditech system recorded the time when Plaintiff and similarly situated patient care employees made entries. Defendants' agents would routinely observe Plaintiff and all others similarly situated patient care employees making these patient chart Meditech entries "off the clock," such as during meal breaks and before and after scheduled shifts.

27.    Despite knowing that Plaintiff and other similarly situated patient care employees were performing work off-the-clock and without compensation, Defendants failed to prevent the performance of such work. Defendants suffered and permitted Plaintiff and all other similarly situated patient care employees to continue doing uncompensated work that they were engaged to perform.

**D.    Defendants' Quarter Hour Rounding Policy**

28.    Defendants' maintained a rounding policy whereby clocking in or out more than seven minutes prior to or after the scheduled start or end of a shift will result in employee's time being rounded to the closest quarter hour. For example, when Plaintiff's shift starts at 7:00 p.m. and ends at 7:30 a.m. clock in times of: (a) 6:52 will round back to 6:45, 6:53 will round forward to 7:00; (b) 7:07 will round back to 7:00, 7:08 will round forward to 7:15; hereinafter, "Quarter Hour Rounding Policy."

29.    Under both federal and state law, rounding is only permissible if the rounding policy does not deprive employees of pay for work performed. Defendants' Quarter Hour Rounding Policy disadvantages employees and deprives them of wages for recorded hours worked because it deprives employees of pay for work performed.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com   www.thiermanbuck.com

THERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

30.     Plaintiff Kabota routinely worked prior to the beginning of her regularly scheduled shift and after the end of her regularly scheduled shift, but due to Defendants' Quarter Hour Rounding Policy, the time spent working for Defendants was rounded off her time for pay purposes.

31.     All other employees employed by Defendants were subject to the same Quarter Hour Rounding Policy as Plaintiff.

32.     In addition, when Plaintiff Kabota and other similarly situated patient care employees worked more than forty (40) hours in a workweek, Defendants' Quarter Hour Rounding Policy operated to deprive Plaintiff and all other similarly situated patient care employees of overtime premium pay for the workweek.

33.     Defendants and Defendants' agents were aware that Plaintiff Kabota was working without compensation due to Defendants' Quarter Hour Rounding Policy. Defendants tracked employee hours and thus Defendants records will show if time worked was improperly rounded off of employee time for pay purposes.

34.     Accordingly, Plaintiff Kabota is entitled to recover wages at her applicable wage rate, at the regular and/or overtime rate of compensation for all time impermissibly rounded off her time for herself and for all similarly situated patient care employees.

**E.     Defendants' Employer-Provided Electronic Mobile Device Policy**

35.     Defendants maintained a policy whereby Plaintiff and all other similarly situated patient care employees would retrieve an employer-provided electronic mobile device ("Electronic Mobile Device") for employee use during the workday (hereinafter referred to as the "Electronic Mobile Device Policy").

36.     The employer-provided an Electronic Mobile Device, which consisted of a type of "iPhone" that Plaintiff and all other similarly situated patient care employees would pick up at their duty station at the beginning of their regularly scheduled shift, where the employer-provided Electronic Mobile Device was located on a charging station.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

37.     This employer-provided Electronic Mobile Device does not function outside of the actual building where Plaintiff works, and Plaintiff and all other similarly situated patient care employees are not allowed to take the Electronic Mobile Devices off premises.

38.     Once Plaintiff picks up the employer-provided Electronic Mobile Device from the charging port, Plaintiff enters her unique log-in credentials in order to be able to use the employer-provided Electronic Mobile Device. Employees do not share log-in credentials and are strictly prohibited from sharing their unique log-in credentials.

39.     Plaintiff and all similarly situated patient care employees are required to carry on their person the employer-provided Electronic Mobile Device throughout the entirety of their workday.

40.     The employer-provided Electronic Mobile Device is used to communicate with co-workers, particularly physicians, nurses, and other medical staff, regarding patients under their care throughout Plaintiff's entire shift, including during meal periods and rest breaks.

41.     Plaintiff and all other similarly situated patient care employees are required to and do continually monitor their employer-provided Electronic Mobile Devices for alerts, notifications, patient emergencies, and physician calls, among other things.

42.     Defendants do not have any policy or procedure by which Plaintiff or other similarly situated patient care employees could hand off, or turn off, the employer-provided Electronic Mobile Device during the entirety of their shift.

43.     At the end of her regularly scheduled shift, Plaintiff would use her unique credentials to log out of the employer-provided Electronic Mobile Device, then place it back on the charging port for use by another employee.

44.     Defendants required all their employees to clock out for their meal periods during their workday. Because Plaintiff and all other similarly situated patient care employees are required to keep their employer-provided Electronic Mobile Device on their person during their meal periods, Plaintiff and all other similarly situated patient care employees are never completely relieved of duty.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

45.     Because Plaintiff and all other similarly situated patient care employees are never completely relieved of duty during purported meal breaks, they never received a bona fide duty-free meal period—i.e., they were always monitoring their employer-provided Electronic Mobile Devices for alerts.

### F.    Defendants' Rest Break Policies and Practices

46.     Defendants do not schedule, authorize, and/or permit employees to take their legally mandated rest breaks.

47.     NRS 608.019(2), emphasis added, provides as follows:

> Every employer shall authorize and permit all his or her employees to take rest periods, which, insofar as practicable, ***shall be in the middle of each work period***. The duration of the rest periods shall be based on the total hours worked daily at the rate of 10 minutes for each 4 hours or major fraction thereof. Rest periods need not be authorized however for employees whose total daily work time is less than 3 and one-half hours. ***Authorized rest periods shall be counted as hours worked***, for which there shall be no deduction from wages.

48.     Nevada law requires that employers pay employees for rest periods according to the following schedule:

> Unless an employee is exempt pursuant to NRS 608.019, an employee that works at least 3 1/2 continuous hours is permitted:
>
> (a)     One 10-minute rest period if the employee works at least 3 1/2 continuous hours and less than 7 continuous hours;
>
> (b)     Two 10-minute rest periods if the employee works at least 7 continuous hours and less than 11 continuous hours;
>
> (c)     Three 10-minute rest periods if the employee works at least 11 continuous hours and less than 15 continuous hours; or
>
> (d)     Four 10-minute rest periods if the employee works at least 15 continuous hours and less than 19 continuous hours.

NAC 608.145.

49.     Plaintiff and all other similarly situated patient care employees are never scheduled for, and/or offered/provided with, their legally mandated rest breaks. As a result,

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

Plaintiff and all other similarly situated patient care employees worked through their legally mandated rest breaks.

50.     While Defendants did not require employees to clock out for purported rest breaks, Plaintiff and all other similarly situated patient care employees were also never completely relieved of duty during those purported rest breaks for the same reasons that they never received a bona fide duty-free meal period—i.e., they were always monitoring their employer-provided Electronic Mobile Devices for alerts.

51.     Because Plaintiff and all other similarly situated patient care employees worked through their legally mandated rest breaks and/or were interrupted during legally mandated rest breaks by their employer-provided Electronic Medical Device, Defendants have failed to separately pay Plaintiff and other similarly situated employees their rest break wages. These rest break wages must be paid at the regular and/or overtime rate of compensation or, at the very least, at the minimum wage rate.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

52.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

53.     Plaintiff brings this action on behalf of herself and all other similarly situated and typical employees as both a collective action pursuant to the FLSA and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## FLSA Classes

54.     Plaintiff brings this action on behalf of herself and the following **FLSA Classes** of similarly situated individuals employed by Defendants:

> A.     **FLSA Rounding Class:** All nonexempt hourly paid persons employed by Defendants who were subject to Defendants' Quarter Hour Rounding Policy during the relevant time period alleged herein.
>
> B.     **FLSA Off-the-Clock Class:** All nonexempt hourly paid persons employed by Defendants who worked off the clock as demonstrated by the comparison between the Meditech electronic medical record system and KRONOS during the relevant time period alleged herein.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

C.  **FLSA Electronic Mobile Device Class:** All nonexempt hourly paid persons employed by Defendants who were provided with an electronic mobile device during their workday at any time during the relevant time period alleged herein.

55.  With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those she seeks to represent for the following reasons, among others:

56.  Defendants employed Plaintiff as a non-exempt, hourly-paid employee who did not receive her full wages for all the hours she worked and, where applicable, overtime premium pay for all hours worked over forty (40) hours in a workweek.

57.  Plaintiff's situation is similar to those she seeks to represent because Defendants failed to pay Plaintiff and all other FLSA Class Members for all time they were required to work, but with the knowledge, acquiescence, and/or approval (tacit as well as expressed) of Defendants' managers and agents.

58.  Common questions exist as to: (1) whether Plaintiff and all other FLSA Rounding Class Members were disadvantaged and deprived of wages for hours worked as a result of Defendants' Quarter Hour Rounding Policy, and (2) whether Plaintiff and FLSA Electronic Mobile Device Class Members were completely relieved of duty for their purported meal periods as a result of Defendants' Electronic Mobile Device Policy.

59.  Upon information and belief, Defendants employ, and have employed, in excess of 500 FLSA Class Members within the applicable statute of limitations.

60.  Plaintiff has signed a Consent to Join form (*see* Exhibit B) that is being filed with the Court concurrently herewith.

### Nevada Classes

61.  Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

62.  Plaintiff brings this action on behalf of herself and the following **Nevada Classes** of similarly situated individuals employed by Defendants:

A.  **Nevada Rounding Class:** All nonexempt hourly paid persons employed by Defendants in the state of Nevada who

were subject to Defendants' Quarter Hour Rounding Policy during the relevant time period alleged herein.

B.    **Nevada Off-the-Clock Class:** All nonexempt hourly paid persons employed by Defendants who worked off the clock as demonstrated by the comparison between the Meditech electronic medical record system and KRONOS during the relevant time period alleged herein.

C.    **Nevada Electronic Mobile Device Class:** All nonexempt hourly paid persons employed by Defendants who were provided with an electronic mobile device at any time during the relevant time period alleged herein.

D.    **Nevada Continuation Wage Class:** All members of the FLSA and/or Nevada Classes who were employed by Defendants during the relevant time period alleged herein, who are no longer employed by Defendants.

63.    Rule 23 Class action status is appropriate in this case for the following reasons:

A.    <u>The Classes are Sufficiently Numerous</u>: Upon information and belief, Defendants employ, and have employed, in excess of 500 Class Members within the applicable statute of limitations. Because Defendants are legally obligated to keep accurate payroll records, Plaintiff alleges that Defendants' records will establish the members of the Class as well as their numerosity.

B.    <u>Common Questions of Law and Fact Exist</u>: Common questions of law and fact exist and predominate as to Plaintiff and Class Members, including, without limitation:

1)    Whether Plaintiff and all other Nevada Off-the-Clock Class Members worked off the clock and without compensation;

2)    Whether Plaintiff and members of the Nevada Rounding Class were disadvantaged and deprived of wages for hours worked as a result of Defendants' Quarter Hour Rounding Policy;

3)    Whether Plaintiff and members of the Nevada Electronic Mobile Device Class were completely relieved of duty for their purported meal periods as a result of Defendants' Electronic Mobile Device Policy;

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

4) Whether Plaintiff and members of the Nevada Electronic Mobile Device Class were completely relieved of duty for their purported nonproductive rest breaks.

5) Whether Plaintiff and members of the Continuation Wage Class are entitled to additional wage compensation as a result of not having been compensated for all their final wages due and owing to them at the time of their termination as a result of Defendants' Quarter Hour Rounding Policy and Defendants' Electronic Mobile Device Policy.

C. <u>Plaintiff's Claims are Typical to Those of Fellow Class Members</u>: Plaintiff was a victim of Defendants' Off-the-Clock practices, whereby employees were not compensated for work performed off the clock prior to the beginning of their regular shift and after the end of their regular shift; Plaintiff was a victim of Defendants' Electronic Mobile Device Policy whereby she was unable to take a bona fide meal period or rest breaks during which she was completely relieved of duty during her workday, which gives rise to meal period and rest break wages; and Plaintiff is a former employee who was not compensated her full wages due and owing at the time of separation of employment. Because Plaintiff is a victim of all of the wrongs committed by Defendants, as are all members of the Classes she seeks to represent, Plaintiff's claims are typical of the Class Members.

D. <u>Plaintiff and her Counsel are Adequate Representatives of the Classes</u>: Plaintiff will fairly and adequately represent the interests of Class Members because Plaintiff is a member of the Classes, she has common issues of law and fact with all members of the Classes, and her claims are typical to other Class Members. Plaintiff's counsel has the necessary experience and resources to fully, fairly, and adequately represent the interests of Class Members.

E. <u>A Class Action is Superior/Common Claims Predominate</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the Classes is impractical. Class

action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207**
(On Behalf of Plaintiff and all members of the FLSA Rounding, Off-the-Clock, and Electronic Mobile Device Classes)

64.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

65.     **FLSA Compensation Requirements.** 29 U.S.C. § 207(a)(1) provides as follows: "Except as otherwise provided in the section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

66.     Once the workday has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

67.     By failing to compensate Plaintiff and the FLSA Off-the-Clock Class for work suffered or permitted by the employer prior to the beginning of her regular shift and/or after the end of her regular scheduled shift, Defendants have failed to properly pay Plaintiff and the FLSA Off-the-Clock Class for overtime hours worked.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

68.    **FLSA Rounding Requirements.** Rounding of time is not *per se* illegal, however an employer may violate the overtime pay requirements if the employer's policy averages out over a period of time that results in a failure to compensate the employee properly for all time they have actually worked. *See* 29 C.F.R. § 785.48.

69.    By failing to compensate Plaintiff and FLSA Rounding Class Members for the time spent engaging in pre- and post-shift work that was rounded off their time for pay purposes, Defendants have failed to properly pay Plaintiff and the FLSA Rounding Class Members for overtime hours worked.

70.    **FLSA Meal Period Requirements.** Employees must be completely relieved from duty for the purpose of eating regular meals. *See* 29 C.F.R. § 785.19. Employees are not relieved if they are required to perform any duties, whether active or inactive, while eating. *Id.* For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. *Id.*

71.    By failing to compensate Plaintiff and FLSA Electronic Mobile Device Class Members for their meal periods because they were never completely relieved of duty, Defendants have failed to pay Plaintiff and the FLSA Electronic Mobile Device Class Members for all regular and overtime hours worked.

72.    Defendants' unlawful conduct has been widespread, repeated, and willful. Defendants knew or should have known that its policies and practices have been unlawful and unfair.

73.    Wherefore, Plaintiff demands for herself and for all others similarly situated that Defendants pay Plaintiff and the FLSA Off-the-Clock, Rounding, and Electronic Mobile Device Class Members one and one-half times their applicable hourly rate of pay for all hours worked in excess of forty (40) hours a week during the relevant time period together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

///

///

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## SECOND CAUSE OF ACTION

**Failure to Pay Minimum Wages Pursuant to the Nevada Constitution and/or NRS 608.250**
(On Behalf of Plaintiff and all members of the Nevada Classes)

74.     Plaintiff realleges and incorporates by reference all the paragraphs above in the Complaint as though fully set forth herein.

75.     NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the Plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." Plaintiff made a demand for unpaid wages upon Defendants pursuant to NRS 608.140, but satisfactory payment was not received.

76.     Article 15 Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer. . . .    An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief.  An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

77.     NRS 608.250 provides the following minimum wage rates to be paid, without discount, to all Nevada employees:

(a)  Beginning July 1, 2019:

(1)  If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $7.25 per hour worked.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.25 per hour worked.

(b)  Beginning July 1, 2020:

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.00 per hour worked.

(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.00 per hour worked.

(c)  Beginning July 1, 2021:

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $8.75 per hour worked.

(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.75 per hour worked.

(d)  Beginning July 1, 2022:

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $9.50 per hour worked.

(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.50 per hour worked.

(e)  Beginning July 1, 2023:

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.25 per hour worked.

(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.25 per hour worked.

78.    Beginning July 1, 2024, the minimum wage is $12.00 per hour worked.

79.    By failing to compensate Plaintiff and Nevada Rounding Class Members for the time spent engaging in the pre-shift and post-shift work that was rounded off their time for pay purposes, Defendants have failed to pay Plaintiff and the Nevada Rounding Class Members their minimum wages for all hours worked in violation of the Nevada Constitution and NRS 608.250. Indeed, zero ($0) dollars is less than the minimum wage.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

80. By failing to compensate Plaintiff and Nevada Off-the-Clock Class Members for all work duties performed prior to the beginning of their regular shift and after the end of their regular shift, Defendants have failed to pay Plaintiff and Nevada Off-the-Clock Class Members their minimum wages for all hours worked in violation of the Nevada Constitution and NRS 608.250. Indeed, zero ($0) dollars is less than the minimum wage.

81. By failing to completely relieve Plaintiff and the Electronic Mobile Device Class Members from all work duties during their meal periods and rest breaks, Defendants have failed to pay Plaintiff and the Nevada Electronic Mobile Device Class Members their minimum wages for all hours worked in violation of the Nevada Constitution and NRS 608.250. Indeed, zero ($0) dollars is less than the minimum wage.

82. Wherefore, Plaintiff demands for herself and for all Nevada Class Members that Defendants pay Plaintiff and Nevada Off-the-Clock, Rounding, and Electronic Mobile Device Class Members their minimum rate of pay for all hours worked (unlawfully rounded work hours, off-the-clock pre- and post-shift work, and wages for on-duty meal periods and rest breaks) during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

**Failure to Pay Wages for All Hours Worked Under Nevada Law**
(On Behalf of Plaintiff and all members of the Nevada Classes)

83. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

84. NRS 608.140 provides that an employee has a private right of action for unpaid wages.

85. NRS 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" and provides: "[A]n employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

86.     Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked (NRS 607.160, 608.016, 608.250)" provides: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

87.     By failing to compensate Plaintiff and Nevada Rounding Class Members for the time spent engaging in the pre-shift and post-shift work that was rounded off their time for pay purposes, Defendants have failed to pay Plaintiff and the Nevada Rounding Class Members their regular rate wages for all hours worked in violation of NRS 608.016.

88.     By failing to compensate Plaintiff and Nevada Off-the-Clock Class Members for all work duties performed prior to the beginning of their regular shift and after the end of their regular shift, Defendants have failed to pay Plaintiff and Nevada Off-the-Clock Class Members their regular rate wages for all hours worked in violation of NRS 608.016.

89.     By failing to completely relieve Plaintiff and Electronic Mobile Device Class Members from all work duties during their meal periods and rest breaks, Defendants have failed to pay Plaintiff and Nevada Electronic Mobile Device Class Members their regular rate wages for all hours worked in violation of NRS 608.016.

90.     Wherefore, Plaintiff demands for herself and for all members of the Nevada Classes that Defendants pay Plaintiff and Nevada Class Members their regular rate of pay for all hours worked (unlawfully rounded work hours, off the clock pre- and post-shift work, and wages for on-duty meal periods and rest breaks) during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## FOURTH CAUSE OF ACTION

**Failure to Timely Pay All Wages Due and Owing Under Nevada Law**
(On Behalf of Plaintiff and the Nevada Continuation Wage Class)

91.     Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

92.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

93.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

94.     NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or … [o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid for 30-days, whichever is less."

95.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

96.     By failing to pay Plaintiff and all members of the Continuation Wage Class for all hours worked in violation of federal and state law, Defendants have failed to timely remit all wages due and owing to Plaintiff and all members of the Continuation Wage Class.

97.     Despite demand, Defendants willfully refuse and continue to refuse to pay Plaintiff and all members of the Continuation Wage Class.

98.     Wherefore, Plaintiff demands 30 days wages under NRS 608.140 and 608.040 and an additional 30 days' wages under NRS 608.140 and 608.050 for all members of the Nevada Continuation Wage Class, together with attorneys' fees, costs, and interest as provided by law.

## **JURY DEMAND**

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

///

///

///

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com  www.thiermanbuck.com

## **PRAYER FOR RELIEF**

Wherefore Plaintiff, individually and on behalf of all similarly situated and typical individuals, prays for relief as follows relating to the collective and class action allegations:

1. For an order conditionally certifying the action pursuant to the FLSA and providing notice to all members of the FLSA Classes so they may participate in the lawsuit;

2. For an order certifying the action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the Nevada Classes;

3. For an order appointing Plaintiff as the Representative of the FLSA and Nevada Classes and her counsel as Class Counsel;

4. For damages according to proof for minimum rate pay for all unpaid hours worked under state law;

5. For damages according to proof, for regular rate pay for all hours worked under both federal and state law;

6. For damages according to proof for overtime compensation for all overtime hours worked under federal law;

7. For liquidated damages;

8. For 60-days of continuation wages, pursuant to NRS 608.140 and 608.040 -.050;

9. For interest as provided by law at the maximum legal rate;

10. For reasonable attorneys' fees authorized by statute;

11. For costs of suit incurred herein;

12. For pre-judgment and post-judgment interest, as provided by law, and

13. For such other and further relief as the Court may deem just and proper.

DATED: April 16, 2025                    THIERMAN BUCK

                                        */s/ Leah L. Jones*
                                        Joshua D. Buck
                                        Leah L. Jones

                                        *Attorneys for Plaintiff and all Similarly
                                        Situated Individuals*